

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION



U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS

**FILED**

FEB - 6 2002

CLERK, U.S. DISTRICT COURT

By _____
          Deputy

| | | |
|---|---|---|
| MELISSA E. SMITH | § | |
| | § | |
| Plaintiff. | § | |
| | § | |
| V | § | Civil Action Number. |
| | § | |
| | § | **3 - 0 2 C V 0. 2 5 2.   P** |
| TRANSPORT WORKERS | § | |
| UNION OF AMERICA, AFL-CIO | § | |
| AIR TRANSPORT LOCAL 556 | § | |
| | § | |
| Defendant. | § | (JURY TRIAL REQUESTED) |

## PLAINTIFF'S ORIGINAL COMPLAINT

TO THE HONORABLE JUDGE OF SAID COURT

COMES NOW, Melissa E. Smith, the Plaintiff in the above-entitled cause and files this, her Original Complaint, complaining of Transport Workers Union of America, AFL-CIO Air Transport Local 556 or whatever entity owned or operated under the assumed name of Transport Workers Union Number 556 and employed Plaintiff on or about March 1, 2001 and in support would show the Court as follows:

### Parties

1. Melissa E. Smith ("Smith") is an individual who is a resident of Coppell, Texas and a citizen of the State of Texas.

2. Transport Workers Union of America, AFL-CIO Air Transport Local 556 ("Local 556"), is an Organized Labor Union and affiliated with the Transport Workers Union of America based in New York, New York. Local 556 can be

served with citation by serving Thom McDaniel, President, at Local 556 principal place of business, 2520 W. Mockingbird Lane, Dallas, Dallas County, Texas 75235.

## Jurisdiction and Venue

3.      This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1331, since this case is being brought for violations of federal law.  Specifically, Plaintiff is alleging violations of Title VII, 42 U.S.C. § 2000 (e), et. seq., commonly referred to as the Civil Rights Act of 1964, as amended in 1991.  In addition, Plaintiff is also complaining of violations of her rights as provided by the Labor-Management Reporting and Disclosure Act, 29 U.S.C. § 401, et. seq., and for common law and statutory defamation.

4.      Venue is proper in the Dallas Division, pursuant to the general federal venue statutes, since the causes of action, which form the basis of this lawsuit, arose in whole or in substantial part in Dallas County, Texas.

### Statement of Facts

5.      Smith began her employment as a flight attendant for Southwest Airlines in September 1979.

6.      Local 556 is a labor union, which represents the flight attendants of Southwest Airlines.

7.      In March 2000 Smith was elected as President of Local 556 and assumed office on May 1, 2000.

8.      During her tenure as President of Local 556, Smith remained an active flight attendant for Southwest Airlines and an active member of 556.

9.      During her tenure as President, Smith, on occasion as described in more detail in this Complaint, expressed concern about inappropriate behavior of members of the Executive Board, including conduct that clearly rose to the level of unlawful sexual harassment.

10.     One concern Smith expressed was that during January 2001 Smith received a report from one of the female staff members of Local 556 that one of the male board members "mooned" female employees of Local 556.

11.     Another concern is that this same board member inappropriately touched one of the female employees of the Union.

12.     On February 4, 2001, Smith contacted the International headquarters of the Union and was advised that it would be appropriate to express her concerns in writing.  An attorney for International reviewed the letters Smith proposed to send and did not find them objectionable.

13.     Smith, as a result of her concerns, advised the Board of these concerns and recommended the Board should adopt a sexual harassment policy for Local 556.

14.     On February 14, 2001, the Executive Board voted to require Smith to apologize to the "mooning" Board member and further voted to exclude the vote from the minutes of the Board meeting.  Smith refused to issue the apology or retract her concerns and believed it would be inappropriate to do so.

15.     On February 26, 2001, Smith received a written letter from the 1st Vice President of the Board warning her that, "I will above all do what is necessary to protect both our Board and Membership from threats and intimidation."

16.     The "mooning" Board member, with the support of the Executive Board acting on behalf of Local 556, brought charges against Melissa under International Constitution Article 19, on the pretextual grounds that Smith was not performing the duties of President and that her actions regarding the sexual harassment issues described above violated the Union Constitution.

17.     The charges were in retaliation for Smith's expressions regarding sexual harassment.

18.     On or about March 15, 2001, the day after Article 19 charges were brought, the Board determined that the charges were appropriate and suspended Smith as President of Local 556.

19.     On or about March 19, 2001, the Board emailed the union membership that it had determined that the charges brought against Smith were proper and that Smith had been suspended.

20.     Smith was initially charged with violations under Article 19 of the Union constitution.

21.     Smith contends that she was suspended as a result of her speaking out on matters of public concern or concern to the union members of Local 556. As an example, Smith complained when one of the Executive Board members pulled down his pants in front of two female 556 employees/members and "mooned" them. Even though Smith did not witness this herself, once she

was informed, by one of the females involved, as President of the local union and supervisor of the "mooned" employees, Smith felt compelled to act and bring this to the attention of the full Executive Board.  The Executive Board's response was to order Smith to apologize for speaking out regarding the issue of Title VII sexual harassment.

22.     In addition, Smith also spoke out when two of the Executive Board members were drunk in public and arrested for that.

23.     After being suspended, Smith filed a charge of discrimination/retaliation with the federal EEOC.   Smith first went to the EEOC on March 20, 2001 and signed the complaint on March 30, 2001.

24.     After receiving her charge of discrimination/retaliation from the EEOC, the Executive Board filed additional non-specific charges against Smith, under Article 21, based on "her actions and statements since being suspended." Smith was advised of the Article 21 charges on April 16, 2001.  Smith was again suspended from office for the alleged Article 21 charges.

25.     In May 2001, the Article 19 charges and the Article 21 charges were considered.  Pursuant to Article 20, the Article 19 charges were tried by a trial committee selected by the Board.  The Article 21 charges were simply voted on by the Board.

26.     With respect to the Article 21 charges, The Executive Board, acting as agent of Local 556, removed Smith from office as President of 556 and placed her as a "member in bad standing" for three years.  The Board then emailed the membership of their actions and the bases for them.  Smith, as a "member in

bad standing," was denied access to the 556 email system and could not respond.

27.  Other apparent reasons for placing Smith as a member in bad standing was an attempt by the Board to prevent her appeal of their actions and to prevent her from running for negotiator or any other Union position.

28.  Under Section 3, Article 19 of the Transport Workers Union of America, AFL-CIO Constitution (which is the Constitution applicable to Local 556), the charges brought by the "mooning" Board Member against Smith had to be tried before a three member trial committee as provided in Article 20.

29.  The Executive Board picked a trial committee as provided in Article 20. Smith objected to the gender make-up of the trial committee (two males, one female), but the Executive Board overruled her objections.

30.  A four day trial was held.  On or about May 17, 2001, the trial committee returned with its decision, which was that the charges brought against Smith were not substantiated.  It decided that Smith be reinstated with all backpay and benefits, and further concluded that the "mooning" Board Member be sanctioned.

31.  The Executive Board claimed it had the power to ignore the findings of the trial committee, so it concluded that the trial committee's decision was not justified, and it imposed sanctions against Smith (i.e., removal from office) anyway for the alleged Article 19 violations.

32.  During this time period, members of the Executive Board stated to members that Smith had been removed for embezzlement or implied that "checks were

missing" from the Union.   These statements were not only false, but constituted defamation per se.

33.    In addition, the Executive Board allowed defamatory statements to be posted on the Union's website.  Since Smith was in "bad standing" she did not have access to the website and could not refute the false allegations.    Based on information received by email, Plaintiff believes Defendant intends to destroy these postings as part of "normal course of business."

34.    Smith appealed the Executive Board's decisions to the Transport Workers Union of America, AFL-CIO in New York ("TWU").  The TWU affirmed the decisions of Local 556, however, the TWU did set aside Smith's "bad standing" status.

35.    As a result of being removed as President, Smith has suffered economic damages in salary and benefits and seeks recovery of actual and punitive damages.

36.    As a result of being removed as President, Smith, as well as all other union members who voted for her to be president of Local 556, was disenfranchised as a voting union member.

37.    Smith continues to work as a Southwest Airlines flight attendant.

### CLAIMS AND CAUSES OF ACTION

### I. Title VII Violations

38.    The above-described actions violate Smith's federally protected rights as guaranteed by Title VII of the United States Code.  Specifically, Smith was retaliated against for assisting an employee in making a sexual harassment

complaint, in attempting to eliminate a sexually hostile work environment, for writing a letter to the mooning board member pertaining to the inappropriate mooning, and for supporting the female staff members. In addition, after Smith filed her charge of retaliation, Local 556 retaliated against Smith by filing new charges against her. Smith contends that the retaliation was an intentional act taken with reckless disregard of her federally protected rights.

39.     All conditions precedent have been performed and this lawsuit has been filed within 90 days of Smith receiving her EEOC Right to Sue Letter.

40.     The violations of Title VII caused Smith injury.

## II.  Violations of LMRDA, 29 U.S.C. § 401

41.     Smith was retaliated against for speaking out against sexual harassment by a Board member and against two Board members who had been arrested for public intoxication. This violates Smith's Free Speech rights as guaranteed in the Union Bill of Rights, LMRDA, 29 U.S.C. § 401, *et. seq.*

42.     The violations of the LMRDA caused Smith injury.

## III. Libel and Slander

43.     Smith was also the target of false statements being made by the Executive Board and on the Union's website. This action constitutes libel and slander under the common law and statutory definition of defamation.

44.     The defamatory statements were made by defendant with malice.

45.     The defamatory statements were made by defendant with an intent to injure Smith.

46.     The defamatory statements caused Smith injury.

## IV. Negligence

47.    Smith was owed a duty of ordinary care by the Defendant to protect her rights as a union member, union employee and union officer.

48.    Defendant failed to exercise the duty of ordinary care owed to Smith.

49.    The failure of Defendant to exercise ordinary care proximately caused damages and injury to Smith.

## PRAYER

50.    To the maximum extent allowed by law, after any required election of remedies, Smith seeks actual damages for lost wages and benefits in the past and future.  Smith is further seeking injunctive relief of reinstatement to her position as President of Local 556.    In addition, Smith is seeking compensatory damages for mental anguish and emotional distress and loss of reputation.  Smith is further seeking punitive damages.  Smith further seeks pre and post judgment interest at the highest rate allowed by law, attorneys' fees as allowed by law, and all costs of court.

## Jury Demand

51.    Smith hereby demands a trial by jury as allowed by law.

WHEREFORE PREMISES CONSIDERED, Smith respectfully request this Court to order the Defendant to appear and answer and that upon final hearing she be awarded all the relief which has been requested in this lawsuit, and any other relief, either in law or in equity which she may show herself justly entitled.

Respectfully submitted,

Frank L. Broyles
Texas State Bar #03230500
GOINS, UNDERKOFLER, CRAWFORD
& LANGDON, LLP
1201 ELM ST. SUITE 4800
DALLAS, TX 75270
(214) 969-5454
(214 969-5902 TELECOPY

Andy Trusevich
**TEXAS STATE BAR** #00785119
QUILLING, SELANDER, CUMMISKY,
CLUTTS & LOWNDS
2001 Bryan Street
Suite 1800
Dallas, Texas  75201
214-871-2100

Attorneys for Plaintiff